UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRED A. MALAK,<br><br>　　　　　　Plaintiff,<br><br>　　vs.<br><br>JO ANNE B. BARNHART,<br>Commissioner of Social Security,<br><br>　　　　　　Defendant. | ) Case No. CV 04-7563 (RNB)<br>)<br>)<br>) MEMORANDUM OPINION; AND<br>) ORDER THEREON<br>)<br>)<br>)<br>)<br>) |

　　On September 13, 2004, plaintiff filed a Complaint herein seeking review of the Commissioner's denial of his application for disability insurance benefits.

　　In accordance with the Court's Case Management Order, the parties filed a Joint Stipulation on August 12, 2005. Thus, this matter now is ready for decision.[1]

　　This Memorandum Opinion shall constitute the Court's findings of fact and conclusions of law.

\\

---

　　[1] As the Court advised the parties in its Case Management Order, the decision in this case will be made on the basis of the pleadings, the administrative record ("AR"), and the Joint Stipulation ("Jt Stip") filed by the parties. In accordance with Rule 12(c) of the Federal Rules of Civil Procedure, the Court will determine which party is entitled to judgment under the standards set forth in 42 U.S.C. § 405(g).

## BACKGROUND

Plaintiff filed prior applications for disability insurance benefits and Supplemental Security Income benefits on August 7, 1987, alleging disability commencing February 5, 1983. These applications were denied initially on December 9, 1987, and upon reconsideration on April 11, 1988. No request for hearing was filed. (See AR 14, 16).

On October 10, 1995, plaintiff filed a new application for disability insurance benefits, alleging disability commencing December 1, 1988. (See AR 56-58, 94-101). After his application was denied initially (AR 59-62) and upon reconsideration (AR 65-66), plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (See AR 32-33, 108-110). At the ensuing hearing held on May 15, 1997, plaintiff appeared with counsel and testified. (See AR 34-55).

As reflected in his May 27, 1997 hearing decision (AR 14-20), the ALJ found inter alia that, to the extent that plaintiff's statement at the hearing constituted an implied request to reopen and revise the prior determination inasmuch as the onset of disability which plaintiff alleged at the hearing was during the period previously ruled upon, plaintiff's request was untimely and res judicata applied to the period between 1983 and April 11, 1988, the date of the prior final determination of the Social Security Administration; that since plaintiff's insured status expired on December 31, 1988, the relevant period for purposes of the ALJ's determination was April 1988 to December 31, 1988; that plaintiff had no medically determinable impairment on December 31, 1988, the date his insured status expired; that plaintiff's statements concerning his impairment and its impact on his ability to work on the date his insured status expired were not credible; and that, since plaintiff did not have any impairment which significantly limited his ability to perform basic work-related functions on the date his insured status expired, plaintiff did not have a severe impairment. Accordingly, the ALJ concluded, plaintiff was not entitled to a period of disability or disability insurance benefits. (See AR 16, 20-21).

Plaintiff timely filed a request with the Appeals Council for review of the ALJ's decision. (See AR 9-10, 627-29). On November 12, 1998, the Appeals Council advised that the ALJ's decision would stand as the final decision of the Commissioner in plaintiff's case. (See AR 4-5, 627-43). Plaintiff then filed an action seeking review of the Commissioner's decision in this Court, in Case No. CV 99-00386-CBM (RNB). On December 10, 1999, the District Judge issued an Order, pursuant to the stipulation of the parties, remanding the case pursuant to sentence six of 42 U.S.C. § 405(g) for further administrative proceedings with the ALJ. The remand order provided that the ALJ would evaluate the new evidence and obtain expert testimony from a cardiologist to assist him in evaluating plaintiff's functional capacity through December 31, 1988, the date plaintiff was last insured.

A supplemental hearing before a different ALJ was held on November 8, 2000. Plaintiff appeared with his current counsel and testified. Also appearing and testifying were Dr. Harold Mills, a medical expert, and Sandra Schneider, a vocational expert. (See AR 671-732).

As reflected in his February 10, 2001 hearing decision (AR 658-68), the ALJ found inter alia that plaintiff had not engaged in substantial gainful activity since the alleged onset date; that during the period through December 31, 1988 (i.e., the date plaintiff's insured status expired), plaintiff had two "severe" impairments (i.e., coronary heart disease and hypertension); that during the period through December 31, 1988, plaintiff's impairments did not meet or medically equal the requirements of a listing from Appendix 1, Subpart P of the Commissioner's regulations (the "Listings"); that plaintiff's allegations regarding his limitations were not totally credible; that during the period through December 31, 1988, plaintiff had the residual functional capacity ("rfc") to lift and carry up to 25 pounds occasionally and 10-15 pounds frequently, to stand and walk for 4 hours in an 8-hour day, and to sit for 6 hours in an 8-hour day, subject to a limitation to occasional stooping and handling; that during the period through December 31, 1988, plaintiff's past relevant

1 work as a computer assembler did not require the performance of work-related
2 activities precluded by his rfc; and that plaintiff's impairments consequently did not
3 prevent him from performing his past relevant work as a computer assembler, as the
4 work is generally performed in the national economy, during the period through
5 December 31, 1988. Accordingly, the ALJ concluded, plaintiff was not entitled to a
6 period of disability or disability insurance benefits. (See AR 667-68).

7 Plaintiff timely filed a request with the Appeals Council for review of the ALJ's
8 decision. (See AR 648-54). On August 29, 2001, the Appeals Council advised that
9 the ALJ's decision would stand as the final decision of the Commissioner in plaintiff's
10 case. (See AR 646-47).

11 Plaintiff then filed a timely action seeking review of the Commissioner's
12 decision in this Court on September 20, 2001, in Case No. CV 01-08164-CBM
13 (RNB). Plaintiff alleged therein that the medical advisor's rfc was not based upon all
14 the evidence; that Dr. Mills' opinions were not supported by the documentary medical
15 evidence; that the ALJ did not provide specific legitimate reasons for rejecting
16 medical evidence; that the ALJ's hypothetical question for the vocational expert did
17 not satisfy this Circuit's legal standards; that the ALJ's credibility finding was flawed;
18 and that the ALJ did not furnish cogent reasons for questioning the authenticity of
19 Exhs. 37 and 48. As reflected in its Report and Recommendation issued June 7, 2002,
20 the Court found and concluded that Dr. Mills' opinions constituted substantial
21 evidence on which the ALJ properly could rely in assessing plaintiff's rfc; that the
22 ALJ properly rejected the retrospective assessments and opinions of plaintiff's treating
23 physicians; and that the ALJ properly rejected the opinions of Drs. Harvey, Farid and
24 Aintablian that plaintiff's cardiac condition satisfied the criteria of New York heart
25 \\
26 \\
27 \\
28 \\

class IIIC in June 1998.[2]  However, for the reasons stated in the Report and Recommendation, the Court was unable to affirm the ALJ's adverse credibility determination, and it followed from the Court's inability to affirm the ALJ's adverse credibility determination that the Court also was unable to affirm the ALJ's rfc determination.  Moreover, the Court was unable to affirm the ALJ's vocational determination because it was premised on plaintiff having the rfc found by the ALJ.  The Court therefore recommended that the case be remanded for further administrative proceedings.  When, as of July 3, 2002, neither party had filed objections to the Report and Recommendation, the District Judge issued an Order adopting its findings, conclusions and recommendations.  Pursuant to that Order, Judgment was entered on July 5, 2002, reversing the Commissioner's decision and remanding the case for further administrative proceedings consistent with the Report and Recommendation.

On September 30, 2002, the Appeals Council issued an Order remanding the case to an ALJ for further proceedings consistent with the District Judge's Order. (AR 1065-66).  Two supplemental administrative hearings thereafter were held by the previously-assigned ALJ: one on January 22, 2003, at which Dr. Mills again appeared and testified; and one on April 17, 2003, at which Ruth Arnush, another vocational expert, appeared and testified.  Plaintiff appeared with his current counsel at both hearings; he answered a few questions at the first, and testified more extensively at the second.  (See AR 1156-1269, 1270-1338).

As reflected in his June 6, 2003 hearing decision (AR 994-1014), the ALJ found inter alia that plaintiff had not engaged in substantial gainful activity since the alleged onset date (i.e., December 1, 1988); that during the period from the alleged onset date

---

[2]  The Court also found that plaintiff's contention regarding the two exhibits was an academic one because both exhibits had been admitted into evidence, and both had been considered by the medical expert.

through December 31, 1988 (i.e., the date plaintiff's insured status expired), plaintiff had two "severe" impairments (i.e., ischemic heart disease and hypertension); that during the period from the alleged onset date through December 31, 1988, plaintiff did not have an impairments that met or medically equaled the requirements of a listing from Appendix 1, Subpart P of the Commissioner's regulations (the "Listings"); that plaintiff's allegations regarding his limitations were not totally credible; that during the period from the alleged onset date through December 31, 1988, plaintiff had the rfc to lift and carry up to 20 pounds occasionally and 10 pounds frequently, and to stand and walk for 2-4 hours in an 8-hour workday, was not limited in sitting, was limited to occasional stooping and handling, and could not climb ladders/rope/scaffolds; and that during the period December 1, 1998 through December 31, 1988, plaintiff could not perform his past relevant work as an electronics assembler supervisor. Based on the vocational expert testimony, the ALJ further found that plaintiff had skills transferable to other occupations; and that even if it was assumed that plaintiff had no transferable skills, using Rule 202.14 of the Commissioner's Medical-Vocational Guidelines as a framework for decision-making in conjunction with the vocational expert's testimony, plaintiff still could perform a significant number of jobs in the national economy that would not require transferable skills (e.g., inspector and hand packager, and small products assembler). The ALJ therefore found that plaintiff had not been under a "disability" as defined in the Social Security Act at any time from his alleged onset date of December 1, 1988 through his date last insured, December 31, 1988. Accordingly, the ALJ concluded, plaintiff was not entitled to a period of disability or disability insurance benefits. (See AR 1013-14).

Plaintiff timely filed a request with the Appeals Council for review of the ALJ's decision. (See AR 977-90). In conjunction with the request for review, plaintiff's counsel submitted additional evidence to the Appeals Council, consisting of treatment records for the period 2002-2004. (See AR 945-974). On August 27, 2004, the

Appeals Council advised that it did not find the additional evidence material to the issue of whether plaintiff was disabled on or before December 31, 1988; and that the ALJ's decision would stand as the final decision of the Commissioner in plaintiff's case. (See AR 941-44).

The timely filing of the instant action followed.

## DISPUTED ISSUES

As reflected in the Joint Stipulation (see Jt Stip at 11-12), the disputed issues which plaintiff is raising as the grounds for reversal and/or remand are as follows:

1. Whether the ALJ's finding that plaintiff did not equal Section 4.04 of the Listings in December 1988, and continuing was supported by substantial evidence.

2. Whether the ALJ's finding that the medical records dated June 17-21, 1988, were not authentic was supported by substantial evidence.

3. Whether the ALJ violated plaintiff's due process rights when he examined him about documents written in 1995 by Mr. Khalil at the April 17, 2003 hearing, without permitting plaintiff to review the documents before testifying.

4. Whether the ALJ's finding that plaintiff had the rfc for light work activities in December 1988 was supported by substantial evidence.

5. Whether the ALJ properly applied the "Cotton test" and the treating physician rule in finding that the plaintiff had an rfc for light work and was not totally credible.[3]

6. Whether the ALJ's finding that plaintiff was able to perform the jobs of inspector and hand packager, and small products assembler in December 1988, was based upon a hypothetical that included all of the plaintiff's verified limitations.

---

[3] The Court notes that the parties addressed the ALJ's adverse credibility determination in the section of the Joint Stipulation where they set forth their respective contentions concerning Disputed Issue No. 2.

# STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence means "more than a mere scintilla" but less than a preponderance. Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971); Desrosiers v. Secretary of Health & Human Servs., 846 F.2d 573, 575-76 (9th Cir. 1988). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401. This Court must review the record as a whole and consider adverse as well as supporting evidence. Green v. Heckler, 803 F.2d 528, 529-30 (9th Cir. 1986). Where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld. Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984).

# DISCUSSION

**A.    Reversal is not warranted based on the ALJ's allegedly erroneous Listings determination.**

The Commissioner's Listing of Impairments sets forth certain impairments which are presumed to be of sufficient severity to prevent the performance of work. See 20 C.F.R. § 404.1525(a). If a claimant has an impairment which meets or equals a Listed Impairment, disability is presumed and benefits are awarded. See 20 C.F.R. § 404.1520(d); Barker v. Secretary of Health & Human Servs., 882 F.2d 1474, 1477 (9th Cir. 1989).

Plaintiff contends here that the ALJ's finding that plaintiff did not equal Listing 4.04 was not supported by substantial evidence, given the testimony of Dr. Mills at the January 22, 2003 supplemental hearing that plaintiff's heart disease "almost certainly" equalled Listing 4.04C, and the other opinions in the medical record from

both plaintiff's treating physicians and three non-treating physicians to the effect that plaintiff had been unable to work since June 1988. (See Jt Stip at 12-15, 16-19).

The claimant has the burden of proving disability, including disability based on the Listings. See Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996). The mere diagnosis of a listed impairment is insufficient, in itself, to sustain a finding of disability. Young v. Sullivan, 911 F.2d 180, 183 (9th Cir.1990); Key v. Heckler, 754 F.2d 1545, 1549 (9th Cir.1985). The impairment must also have the findings shown in the Listing of that impairment. See 20 C.F.R. § 404.1525(d); Sullivan v. Zebley, 493 U.S. 521, 530, 110 S. Ct. 885, 107 L. Ed. 2d 967 (1990) ("An impairment that manifests only some of those criteria, no matter how severely, does not qualify."); Young, 911 F.2d at 184. "To equal a listed impairment, a claimant must establish symptoms, signs and laboratory findings 'at least equal in severity and duration' to the characteristics of a relevant listed impairment." Tackett v. Apfel, 180 F.3d 1094, 1099 (9th Cir.1999) (citation omitted); 20 C.F.R. § 404.1526.

As the Commissioner points out, while Dr. Mills stated at the January 22, 2003 hearing that plaintiff's coronary disease "almost certainly" equalled Listing 4.04C during the relevant period, Dr. Mills clearly qualified that statement by also stating that he was ignoring the exercise test qualification. (See AR 1328). Further, as the ALJ noted and Dr. Mills conceded, the medical evidence of record here for the relevant period did not include any angiographic evidence as required under Listing 4.04C. (See AR 1327). The Court deems plaintiff's failure to reply to the Commissioner's contention that the medical evidence of record here for the relevant period did not contain the requisite medical findings as a concession to the correctness of the Commissioner's position.[4] The Court also notes that, under Social Security

---

[4] Plaintiff's reliance in his Reply Regarding Issue No. 1 on Erickson v. Shalala, 9 F.3d 813 (9th Cir. 1993) is misplaced, because the issue in that case was not
(continued...)

9

1  Ruling[5] ("SSR") 96-6p, the ALJ is permitted to assume from the signature of a State
2  agency physician on a Disability Determination and Transmittal Form that
3  "consideration has been given to the question of medical equivalence at the initial and
4  reconsideration levels of administrative review." Here, the record before the ALJ
5  included Disability Determination and Transmittal Forms signed by State agency
6  physicians reflecting their initial disability determination and their disability
7  determination on reconsideration. (See AR 67-68).

**B.   Reversal is not warranted based on the ALJ's alleged error in questioning the authenticity of the medical records dated June 17-21, 1988.**

The Court concurs with the Commissioner that the ALJ's alleged error in questioning the authenticity of the medical records dated June 17-21, 1988 is a nonissue, since the originals of those records were admitted into evidence, and those records were reviewed and considered by Dr. Mills. (See AR 1135-1143, 1293-1310). Moreover, the June 26, 2003 hearing decision reflects that the ALJ also considered this evidence, despite questioning its authenticity. (See AR 1010-11).

**C.   Reversal is not warranted based on the ALJ's alleged failure to make a proper adverse credibility determination.**

Under the "Cotton test," where the claimant has produced objective medical evidence of an impairment which could reasonably be expected to produce some degree of pain and/or other symptoms, and the record is devoid of any affirmative

---

[4](...continued)
whether the ALJ had properly found that plaintiff's impairment did not meet or equal a listed impairment.

[5]   Social Security Rulings are binding on ALJs. See Terry v. Sullivan, 903 F.2d 1273, 1275 n.1 (9th Cir. 1990).

evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of the claimant's pain and/or other symptoms only if the ALJ makes specific findings stating clear and convincing reasons for doing so. See Cotton v. Bowen, 799 F.2d 1403, 1407 (9th Cir. 1986); see also Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996); Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993); Bunnell v. Sullivan, 947 F.2d 341, 343 (9th Cir. 1991).

Here, as set forth in the body of the hearing decision, the ALJ's adverse credibility determination was based on: (1) inconsistences in plaintiff's testimony concerning his past work, and concerning the filling out of the Vocational Report; (2) the objective medical evidence that plaintiff only had moderate heart disease during the period prior to December 31, 1988; (3) the evidence that plaintiff was not obtaining medical treatment very frequently during that period; (4) the evidence that plaintiff's treatment during that period was fairly conservative; (5) the absence of any evidence that the medications being prescribed for plaintiff during that period were causing any significant side effects; (6) plaintiff's description of his daily activities in 1995, and the absence of any evidence that plaintiff's medical problems had a major impact on his ability to perform daily activities during the period prior to 1989. (See AR 1007-08).

Based on its own review of the AR, the Court finds that these findings by the ALJ were supported by the substantial evidence of record. Further, the Court concurs with the Commissioner that the ALJ's stated reasons satisfied the governing standard. See, e.g., Thomas v. Barnhart, 278 F.3d 948, 958-59 (9th Cir. 2002) (ALJ may properly consider inconsistencies either in claimant's testimony or between claimant's testimony and claimant's conduct, claimant's daily activities, and claimant's work record); Tidwell v. Apfel, 161 F.3d 599, 602 (9th Cir. 1998) (weak objective support, lack of treatment, daily activities inconsistent with total disability, and helpful medication undermined subjective testimony of disabling pain); Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995) (ALJ may properly rely on inconsistencies in the

claimant's testimony, and the fact that only conservative treatment had been prescribed); Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995) (ALJ may properly rely on claimant's daily activities, inconsistencies in claimant's testimony, failure to pursue treatment and effectiveness of medication); Flaten v. Secretary of Health & Human Svcs., 44 F.3d 1453, 1464 (9th Cir. 1995) (ALJ may properly rely on minimal medical treatment for back pain); Fair v. Bowen, 885 F.2d 597, 603-04 (9th Cir. 1989) (ALJ may properly rely on the unexplained or inadequately explained failure to seek treatment); Williams v. Bowen, 790 F.2d 713, 715 (8th Cir. 1986) (ALJ may properly rely on evidence that claimant has received minimal medical treatment).

**D.  Reversal is not warranted based on the ALJ's examination of plaintiff at the April 17, 2003 hearing about documents written in 1995 by Mr. Khalil, without permitting plaintiff to review the documents before testifying.**

The Court concurs with the Commissioner that the ALJ did not violate plaintiff's due process rights by refusing to allow him to review his October 27, 1995 Vocational Report (see AR 88-93), which had been signed by plaintiff but allegedly had been completed by plaintiff's friend, before questioning plaintiff about statements contained in the Report. Richardson v. Perales, 402 U.S. 389, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971) is inapposite for the reasons stated by the Commissioner. (See Jt Stip at 28-29). Further, as the ALJ pointed out, his examination of plaintiff about statements in the Vocational Report, without permitting plaintiff to review those statements first, comported with Fed. R. Evid. 613.

**E.  Reversal is not warranted based on the ALJ's alleged error in finding that plaintiff retained the rfc for light work activities in December, 1988.**

Plaintiff contends that the ALJ erred in making his rfc determination by relying on the testimony of Dr. Mills to the effect that plaintiff retained the rfc for light work activities (with additional nonexertional limitations) as of December 31, 1988 (see AR

12

1312-14), because that testimony conflicted with Dr. Mills' statement that plaintiff's heart disease "almost certainly" equalled Listing 4.04C during the relevant period. (See Jt Stip at 30-31). The Court disagrees. As discussed above, Dr. Mills clearly qualified that statement by also stating that he was ignoring the exercise test qualification. Further, Dr. Mills conceded that the medical evidence of record here for the relevant period did not include any angiographic evidence as required under Listing 4.04C. Since Dr. Mills' statement therefore did not support a finding that plaintiff was presumptively disabled under the Listings, there was no conflict in his testimony.

To the extent plaintiff also is contending with respect to Disputed Issue No. 4 that the ALJ erred by failing to accord proper weight to the opinions of Dr. Abrahim, plaintiff's treating physician (see Jt Stip at 34), the Court also disagrees for the reasons discussed in the next section.

**F.    Reversal is not warranted based on the ALJ's alleged error in failing to credit the retrospective opinions of plaintiff's treating physicians.**

Plaintiff contends that the ALJ erred by failing to accord proper weight to the retrospective assessments and opinions of plaintiff's rfc by his treating physicians. In particular, plaintiff appears to be referring to the rfc questionnaire completed by Dr. Abrahim, and to the physical capacities evaluation forms completed by Drs. Harvey, Patel, Helmy and Floro. (See Jt Stip at 35-39, 40-41).[6]

\\

---

[6]    To the extent plaintiff also is referring to the May 11, 1997 rfc assessment by Dr. Amaro (see AR 583-87), the Court notes that Dr. Amaro was not even purporting to render an assessment of plaintiff's rfc for the period prior to December 31, 1988. Rather, Dr. Amara expressly stated that 1995 was the earliest date that the description of symptoms and limitations in his assessment applied. (See AR 587).

Dr. Abrahim's assessment, which was dated May 10, 1997, purported to be based solely on Dr. Abrahim's contacts with plaintiff during the period 1986-1989. According to Dr. Abrahim, plaintiff constantly experienced pain that interfered with his ability to concentrate, plaintiff was unable to lift an object weighing less than 10 pounds, plaintiff needed to keep his legs elevated "all the time," plaintiff required a cane for occasional standing and walking, and, in an 8-hour work day, plaintiff was able to sit for less than 2 hours and able to stand/walk for less than 2 hours. (See AR 570-73).

Each of the forms completed by Drs. Harvey, Patel, Helmy and Floro was dated either October 28 or October 29, 1999. The assessments on each form were identical. Each of the doctors opined that plaintiff could sit for 4 hours at a time, could stand for only 1 hour at a time, could walk for 0 hours at a time, could not perform any lifting or carrying, could occasionally bend and squat, and could never crawl, climb or reach. All four doctors stated that their assessments were for June of 1988, and were based on the electrocardiogram of June 17, 1988, and the echo Doppler examination of June 21, 1988. (See AR 739-42, 758-61).

It is well established in this Circuit that a treating physician's opinions are entitled to special weight, because a treating physician is employed to cure and has a greater opportunity to know and observe the patient as an individual. See McAllister v. Sullivan, 880 F.2d 1086, 1089 (9th Cir. 1989). However, under the Commissioner's regulations, the ALJ is not required to consider a physician to be the claimant's treating physician if the claimant's relationship with the physician is not based on the claimant's need for treatment, but rather is based solely on the claimant's need to obtain a report in support of the claimant's benefits claim. See 20 C.F.R. §§ 404.1502, 416.902.

Here, the record reflects that Dr. Abrahim only had seen plaintiff on several occasions during the period 1986-1989. (See AR 640). Thus, Dr. Abrahim had not seen plaintiff for approximately 7-1/2 years when he rendered his May 10, 1997

opinions, and did not have a true ongoing treatment relationship with plaintiff as of the time he rendered his opinion. Insofar as Dr. Abrahim's assessment of plaintiff's rfc during the period 1986-1989 did not warrant the status of a treating physician's opinion, Dr. Abrahim's assessment merely created a conflict with Dr. Mills' assessment and opinion of plaintiff's rfc, which it was within the ALJ's province to resolve. See Young v. Heckler, 803 F.2d 963, 967-68 (9th Cir. 1986)("In the absence of any conclusive medical evidence on the issue, it is the function of the Secretary to resolve questions of resolutions of conflicts in the evidence."); Rhinehart v. Finch, 438 F.2d 920, 921 (9th Cir. 1971)("Where there is conflicting evidence sufficient to support either outcome, we must affirm the decision actually made.").

Moreover, a treating physician's opinions are not conclusive as to either the claimant's physical condition or the ultimate issue of disability. See Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989). The weight given a treating physician's opinion depends on whether it is supported by sufficient medical data and is consistent with other evidence in the record. 20 C.F.R. § 404.1527.

Here, all of the treating physician assessments and opinions on which plaintiff is relying post-dated the denial of plaintiff's August 7, 1987 applications for disability insurance benefits and Supplemental Security Income benefits, and the denial at the initial and reconsideration levels of his October 10, 1995 application for disability insurance benefits. The four physical capacities evaluation forms were obtained after the Appeals Council had advised that the first ALJ's adverse decision would stand as the final decision of the Commissioner in plaintiff's case. In rejecting Dr. Abrahim's May 1997 assessment, the ALJ reasoned that it did "not contain a citation to any clinical findings or objective signs during the period through December 31, 1988," and that the stated limitations were "exaggerated when compared to the clinical findings on or before December 31, 1988." (See AR 1009-10). In rejecting the opinions and assessments of plaintiff's other treating physicians, the ALJ reasoned that none of them had treated plaintiff during the relevant period, and that the

15

1 limitations asserted by them were "not supported by the medical evidence dated on
2 or before December 31, 1988," and "inconsistent with the claimant's statements to his
3 physicians as reflected in the medical records." (AR 1010). The ALJ also noted that
4 it was highly unusual that all four of the physicians "asserted exactly the same
5 limitations." (Id.).

The Court finds that the ALJ properly rejected the retrospective assessments
and opinions of plaintiff's treating physicians in favor of Dr. Mills' assessment and
opinion of plaintiff's rfc. See Johnson, 60 F.3d at 1433; see also, e.g., Saelee v.
Chater, 94 F.3d 520, 522 (9th Cir. 1996) (treating physician's report obtained for
purposes of the administrative hearing); Flaten, 44 F.3d at 1463 (ALJ properly may
reject treating physician's opinion when it was obtained after the claimant already had
been denied benefits, and when the restrictive opinion was inconsistent with the
claimant's general lack of treatment); see also Crane v. Shalala, 76 F.3d 251, 253 (9th
Cir. 1996)(ALJ permissibly rejected psychological check-off reports that did not
contain any explanation of the bases of their conclusions). Not only were
retrospective assessments and opinions of plaintiff's treating physicians to the effect
that plaintiff's cardiac condition rendered him practically non-functional unsupported
by the objective medical evidence of record for the relevant time period upon which
Dr. Mills relied for his contrary assessment and opinion, but their assessments and
opinions also were inconsistent with plaintiff's statements to his physicians as
reflected in the medical records. For example, according to the medical history related
by plaintiff to one of his treating physicians on February 26, 1990, plaintiff's chest
pain had started approximately a year earlier and previous diagnostic tests had been
"normal." (See AR 156). Further, in July, 1991, plaintiff had related to another

25 \\
26 \\
27 \\
28 \\

16

physician that he was active in managing his building, and that he usually walked up and down the floors and had not experienced chest pains. (See AR 250).[7]

### G. Reversal is not warranted based on the ALJ's alleged failure to make a proper vocational determination.

To the extent that plaintiff appears to be contending that, in his February 10, 2001 hearing decision, the ALJ erred in finding that plaintiff's impairments did not prevent him from performing his past relevant work based on the expert vocational testimony of Ms. Schneider (see AR 668), the Court concurs with the Commissioner that plaintiff's contention is irrelevant. In his June 6, 2003 hearing decision, the ALJ found that, during the period December 1, 1988 through December 31, 1988, plaintiff could not perform his past relevant work. (See AR 1014).

Moreover, the Court's rejection above of plaintiff's claims challenging the ALJ's rfc determination is dispositive of plaintiff's contention that the ALJ erred in his vocational determination. Hypothetical questions posed to a vocational expert need not include all alleged limitations, but rather only those limitations which the ALJ finds to exist. See, e.g., Magallanes, 881 F.2d at 756-57; Copeland v. Bowen, 861 F.2d 536, 540 (9th Cir. 1988); Martinez v. Heckler, 807 F.2d 771, 773-74 (9th Cir. 1986). Here, the record reflects that one of the hypotheticals posited by the ALJ to Ms. Arnush, the vocational expert at the April 17, 2003 hearing, was a hypothetical individual having the rfc found by the ALJ (i.e., lifting and carrying up to 20 pounds occasionally and 10 pounds frequently, standing and walking for 2-4 hours in an 8-hour workday, unlimited sitting, occasional stooping and handling, and no climbing of ladders/rope/scaffolds) along with plaintiff's vocational profile. The vocational

---

[7] The Court notes that the copy of the Administrative Record filed herein on March 21, 2005 is missing pages 216-55. However, AR 250 was not missing from the copy filed in connection with Case No. CV 01-08164-CBM (RNB).

expert testified that such an individual had skills transferable to occupations for which there were jobs existing in the national and local economies, and that there also were entry level jobs existing in the national and local economies which such an individual could perform.  (See AR 1243-51).

## ORDER

IT THEREFORE IS ORDERED that Judgment be entered affirming the decision of the Commissioner, and dismissing this action with prejudice.

DATED:   September 2, 2005

                                            /S/
                                 ROBERT N. BLOCK
                                 UNITED STATES MAGISTRATE JUDGE